IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 21, 2003 Session

## BILL GOINS, ET AL. v. CREDITCORP, ET AL.

**Appeal from the Circuit Court for Bradley County**
No. V-96-175      William H. Inman, Senior Judge, sitting by special designation

### FILED JANUARY 8, 2004

### No. E2002-01927-COA-R3-CV

---

This appeal reaches us in the form of several consolidated class action lawsuits. In each action the Plaintiffs alleged that Defendants, who are owners and/or operators of check cashing companies, effectively made short-term loans to Plaintiffs and charged them exorbitant and usurious interest rates, in violation of various state and federal statutes. After negotiation, the parties reached a settlement agreement, which was presented to and approved by the Trial Court. At issue in this appeal is the interpretation of a provision in the settlement agreement. Plaintiffs filed a "motion to enforce" which alleged that Defendants violated the settlement agreement by willfully failing to forgive and release certain debts of Plaintiffs resulting from transactions taking place on or before September 30, 1997. Defendants argued, among other things, that the agreement did not require them to release the debts at issue. The Trial Court dismissed Plaintiffs' motion to enforce the settlement agreement. We vacate the Court's judgment and remand the case for an evidentiary hearing.

**Tenn.R.App.P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and CHARLES D. SUSANO, JR., JJ., joined.

Richard A. Fisher, Cleveland, for the Appellants, Bill Goins, et al.

Roger A. Jenne, for the Appellees, Creditcorp, d/b/a Check Into Cash, et al.

### OPINION

The class action lawsuits at bar were filed in 1996. The complaints alleged that Defendants, who are in the check cashing or "deferred presentment" business, charged the Plaintiffs unconscionable and usurious interest in excess of 494% per annum on "short-term consumer loans." Subsequently, by an order not contained in the record, the lawsuits were consolidated. On September 19, 1997, the parties reached a settlement agreement, and on October 17, 1997 they filed

by joint motion a stipulation of proposed settlement. On January 21, 1998, Judge Russell C. Hinson, who had been assigned to hear the case by special order of the Supreme Court, granted final approval of the settlement agreement and incorporated it into the Court's final judgment.

The Trial Court's final judgment contains the following provision:

> Without affecting the finality of this Order, the Court shall retain continuing jurisdiction over the action and the settling Parties. . .for such purposes as supervising the implementation, enforcement, construction, and interpretation of the Settlement Agreement.
> Any disputes or controversies arising with respect to the interpretation, enforcement, or implementation of the Settlement Agreement shall be presented by motion to the Court.

On July 9, 1998, Plaintiffs filed a pleading styled "motion to enforce settlement agreement, recover damages and for injunctive relief" which alleged as follows in relevant part:

> Defendants knowingly, intentionally, willfully, unlawfully, and in direct violation of the Judgment and Orders of this Court, collected and continue to collect money from class members for transactions which occurred prior to October 1, 1997. Members of the class were released from payment of those debts, both principal and "fees" arising from "check cashing" transactions and renewals.

At a hearing held on March 8, 2000, Judge Hinson ordered an evidentiary hearing to resolve the issues raised by this motion, and scheduled the hearing for October 11, 2000. The October 11, 2000 hearing was unexpectedly ended prematurely, apparently for personal reasons of the Court which are unrevealed by the record. Subsequently, Judge William H. Inman was designated to replace Judge Hinson in hearing this case. The reason for the transfer is not contained in the record.

A hearing was held on April 15, 2002, at which Judge Inman ordered the parties to file affidavits supporting their respective positions. After the parties had filed affidavits, on July 11, 2002, the Trial Court denied Plaintiffs' motion without hearing further evidence. Plaintiffs have appealed this ruling.

Although the record in this case is voluminous, and Plaintiffs have subdivided the dispositive issue into twelve parts in their brief, the parties' dispute in essence arises from their inability to agree to what they agreed upon in the following provision of the settlement agreement:

> This settlement shall constitute complete and binding mutual releases on behalf of the class and Defendants for any and all claims arising out of these transactions, or that could have been brought as a result of these transactions, against all class members and their agents and

counsel and on behalf of the class members against all individual and corporate defendants including each corporation's agents, employees, officers, shareholders, and counsel.

The Trial Court's judgment approving the settlement agreement, filed in 1998, incorporates the settlement agreement in its entirety and states that it "shall have the full force and effect of an Order of the Court." The judgment further provides that "pursuant to the terms and conditions of the Settlement Agreement. . .as a part of said settlement, Defendants have heretofore released all class members from all claims arising out of or related to "check cashing transactions" occurring prior to October 1, 1997."

The essence of Plaintiffs' argument is that the parties agreed, by the above-mentioned terms of the settlement agreement and judgment, that the Defendants would forgive and release all debts incurred by Plaintiffs as a result of check-cashing transactions prior to October 1, 1997. Plaintiffs' motion to enforce alleges that Defendants failed to inform certain Plaintiffs that their debts had been released. Plaintiffs' motion states as follows in relevant part in this regard:

Class counsel conducted a random survey of class members who paid "fees" to Defendants in 1997. None of these class members were notified of the release of debts to Defendants. Class members continued to pay their debt to Defendants in October 1997 and thereafter. Class counsel requested the Class Administrator and her assistant to conduct random inquiries on (a) notice of release of the debt and (b) Defendants' collection of "fees" after September 30, 1997, for prior transactions. Class members were not told by Defendants they were released and Defendants did not refuse payments.

Defendants do not deny that they continued to collect payments for debts incurred by Plaintiffs prior to October 1, 1997. Defendants contend that the language of the judgment and settlement agreement releasing Plaintiffs from "all claims arising out of or related to" transactions before October 1, 1997 means only claims arising from accounts which became *delinquent* after that date. Defendants assert the following in their brief in this regard:

The Court-approved mutual releases did not require Defendants to make a total refund of the cash advances. Moreover, the Court-approved mutual releases contain no language to that effect. Defendants simply did not agree to make full refunds as Plaintiffs allege.

We find that the disputed language of the settlement agreement and judgment is ambiguous and conceivably capable of supporting either interpretation offered by the parties. The following

excerpt from the transcript of the hearing at which the settlement agreement was presented to the Trial Court provides guidance as to the intention of the parties regarding the language at issue:

> [PLAINTIFFS' COUNSEL]: The defendants will release each and every class member from any and all claims arising out of any transactions entered into by class members–excuse me, Your honor–on or before September 30.
>
> There were a lot of people who have gone into bankruptcy or who have been unable to pay the amount because of their impoverished condition they owe, and all those debts are waived. That will be a value, a settlement value that we have not yet determined. We think it's going to be about 10 percent of their business, but that's going to be verified, and we'll present that to the Court prior to January 15. It should have a substantial financial value to the class plaintiffs, this excusing of any debt they may owe to the defendants.
>
> THE COURT: While we're there, when I read that paragraph that's the way I construed it, but I think that it might ought to have a little more explanation, that that is what it means in the document. It was not–well, I found myself wondering if that's what it meant, that they released each of these class members from anything that they owe or is claimed to be owing to the defendants; is that right?
>
> [PLAINTIFFS' COUNSEL]: Yes, Your Honor. I can put that exact language in there if you want, "From anything they owe."
>
> THE COURT: "Or is claimed to be owing." You may find something better than that, but I just–I guess I found myself wondering if it meant what it said.
>
> [PLAINTIFFS' COUNSEL]: Okay.
>
> THE COURT: I would construe it that way if I were called upon to do so, going the way you said, but somehow it seems to me that it might stand a little elaboration.
>
> [PLAINTIFFS' COUNSEL]: I'm going to propose that read, "The defendants release each and every class member from anything they owe." Let's see.
>
> THE COURT: "From anything owed to the defendants or claimed to be owing to the defendants."

[PLAINTIFFS' COUNSEL]: "Arising out of–"

THE COURT: "Arising out of any transaction from any of the class members," but if either of you feels differently about that, don't hesitate to say so. I won't be offended.

[PLAINTIFFS' COUNSEL]: I would suggest, "The defendants release each and every class member from any money owed to or claimed to be owed to defendants arising out of any transaction into [sic] by any class member." What do you think about that, Mr. Pope?

[DEFENSE COUNSEL]: That's fine, Your Honor. The fact that the Court is questioning it as far as becoming part of the record, that the intention of the phrase, in case there is any ambiguity in the phrase, is meant to intend–and here again you'll find this on the Jones' documents as we come back to those–that they are released. Anyone that has a transaction or a claim that's based on a transaction on or before September 30 is in essence given forgiveness of that by the defendants. Is that not what it is intended to mean?

[PLAINTIFFS' COUNSEL]: Yes.

[DEFENSE COUNSEL]: I'm saying that for the record. Would that not suffice?

THE COURT: All right. As I say, once you say it says what I thought it said–

[DEFENSE COUNSEL]: It does.

THE COURT: But then I found myself wondering if that's what they intended.

[DEFENSE COUNSEL]: It is additional incentive, as [Plaintiffs' counsel] Mr. Fisher has pointed out, by the defendants. It's somewhat of a moving figure right now, as he properly stated, that we can't give you the exact dollar amount, only an estimate, but that will come down and obviously before you conclude the final approval it will be set forth on that. Frankly, Your Honor, I don't know how many of those there are, but there are those that still claim. Some of them I understand are in bankruptcy, correct?

[PLAINTIFFS' COUNSEL]: They are, but we expect those claims to be withdrawn if any have been filed in bankruptcy court.

[DEFENSE COUNSEL]: If it's all right with the Court in regard to the language, the Court raised the question of the intention of the language, and I guess the Court pretty well answered his own question on behalf of the defense joining in and I believe the Plaintiff would conclude the Court is right, and it's stated on the record.

THE COURT: That the Court had interpreted it as it said.

[DEFENSE COUNSEL]: Yes, sir.

THE COURT: Well, that's probably sufficient.

[PLAINTIFFS' COUNSEL]: There's no reason to change that language, that it's being well understood on the record what it meant?

THE COURT: Yes. All right.

It is worth noting at this point that at the beginning of the hearing where the above discussion took place, defense counsel William Pope, Jr. stated for the record that he was there to "represent all the parties in the controversy here today as far as the defendants are concerned."

The transcripts in the record contain similar discussions which need not be reproduced here, but which suggest, as does the one above, that the intention of all the parties to the settlement agreement was that the Defendants would forgive and release any and all of the debts resulting from transactions with Plaintiffs prior to October 1, 1997. It is clear from the record that this interpretation reflects Judge Hinson's understanding of the agreement as well. We find and hold, based on a preponderance of the evidence, that the intent and agreement of the parties was that the Defendants would release the debts of Plaintiffs for any and all transactions occurring prior to October 1, 1997.

The Defendants argue in their brief that the Plaintiffs are barred from recovery by the principle of accord and satisfaction, but this argument only pertains to the lump sum payments that Defendants made to the class members, which Plaintiffs accepted and negotiated. The Plaintiffs' allegation that Defendants did not comply with that portion of the agreement requiring them to release the debts at issue is not barred by the doctrine of accord and satisfaction.

As noted above, at the April 15, 2002 hearing, Judge Inman ordered the parties to file affidavits supporting their positions. Plaintiffs filed affidavits of thirteen class members, each of whom testified to the effect that the Defendant which whom they had conducted business did not inform him or her that the debts at issue had been released, and that he or she paid them plus fees.

One of the Plaintiffs' affidavits states that "I received information that states I did not have to pay back the checks, but the [Defendant] Check into Cash manager told me that I *did* have to pay them back. It took me until January, 1998, before I could pay off the debt."

The Defendants argue that the individual Plaintiffs in this case should be allowed to voluntarily repay the debts if they are so inclined. The Trial Court agreed, stating in its memorandum opinion that "[t]he record is clear that nothing in the documents governing the settlement prohibited the Defendants from accepting voluntary payments for transaction[s] occurring during the class period." We agree with this statement; however, it is not clear that many of the class members' payments were fully informed by the facts and terms of the settlement, so as to have been truly "voluntary."

As previously noted, Judge Hinson ordered an evidentiary hearing in response to Plaintiffs' motion to enforce the settlement, in order to have the facts completely developed and argued in what is essentially a factual dispute. At the October 11, 2000, according to Plaintiffs' brief, "Plaintiffs had partially examined one witness pursuant to the hearing ordered by the Court, when the hearing was terminated due to personal reasons of the Court." Plaintiffs seek to complete this hearing, and we agree that they should be allowed to do so.

The Trial Court expressed concern about the perceived interminable nature of this litigation, stating in its memorandum opinion, "apparently many, if not most of the thousands of customers who borrow money in the manner shown simply continued to do so. The process is never ending." But Defendants agreed only to forgive and release Plaintiffs' debts up to a specific point in time, October 1, 1997. Upon remand, the Trial Court should focus only upon those debts and transactions which occurred before that date, and such discovery as allows this action to be ended as expeditiously and inexpensively as possible should take place.

We have duly considered the remainder of Defendants' assertions, including their procedural and jurisdictional arguments, and found them without merit. For the foregoing reasons the judgment of the Trial Court is vacated and the case remanded for proceedings consistent with this opinion. Costs of appeal are adjudged against the Appellees, Creditcorp, d/b/a Check Into Cash, et al.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE